UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

SECURITIES AND EXCHANGE COMMISSION,
100 F Street, N.E.
Washington, D.C. 20549-5561

                        Plaintiff,

            v.

GARY L. VALINOTI,

                        Defendant.

C.A. No. _____

---

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

### SUMMARY

1. Gary L. Valinoti ("Valinoti") violated Section 5 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e] by engaging in unregistered sales and transfers of securities of a publicly-traded corporation first named Professional Perceptions, Inc. ("PPI"), then renamed JagNotes.com, Inc., and currently named Jag Media Holdings, Inc. (collectively "the Company").

2. Defendant Valinoti's unregistered sales and transfers of securities of the Company occurred after a March 16, 1999 reverse merger between PPI and a privately-held corporation named New Jag, Inc. ("New Jag"). Before the reverse merger, defendant Valinoti was the chief executive officer ("CEO") and president of New Jag. After the reverse merger, he became the CEO and president of the Company and chairman of its board. Defendant Valinoti purchased 250,000 shares of the securities of the Company on the day of the reverse merger from an affiliate of PPI. Defendant

Valinoti sold certain of these shares on the Nasdaq over-the-counter bulletin board ("OTCBB") before the expiration of one year, and transferred certain other of these shares to third-parties for value. These third-parties also sold their shares on the OTCBB within one year from the date of the transfers.

3.  No Securities Act registration statement was in effect as to any of the sales or transfers by defendant Valinoti, or as to any of the sales by the third-party transferees. Defendant Valinoti's and his transferees' sales generated illicit gains of approximately $2,937,040.

4.  Unless restrained and enjoined by this court, defendant Valinoti will continue to engage in transactions, acts, practices, and courses of business that violate Section 5 of the Securities Act [15 U.S.C. § 77e].

5.  The Commission seeks a permanent injunction against future violations of Section 5 of the Securities Act [15 U.S.C. § 77e] and disgorgement of defendant Valinoti's illicit gains together with prejudgment interest.

## JURISDICTION

6.  The Commission brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)].

7.  This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v].

8.  In connection with the transactions, acts and practices described in this Complaint, Defendant Valinoti, directly or indirectly, used the means or instruments of transportation or communication in interstate commerce or of the mails in the offer or sale of securities of the Company.

**THE DEFENDANT**

9. Gary L. Valinoti, age 48, resides in Red Bank, New Jersey, and was the president and CEO of privately-held New Jag from the time of New Jag's incorporation in 1992 until March 16, 1999, when New Jag completed a reverse merger with PPI, and was renamed JagNotes.com, Inc. Defendant Valinoti was the CEO and president of the Company and chairman of its board of directors from March 16, 1999 until April 2, 2004.

**RELATED ENTITIES**

10. Jag Media Holdings, Inc., a Nevada corporation with its principal executive offices in Boca Raton, Florida, is an Internet-based provider of financial news and investment information. The Company was first named Professional Perceptions, Inc., while operating as a non-reporting Securities Act Regulation D issuer from December 1997 to March 16, 1999. The Company changed its name to JagNotes.com, Inc. pursuant to a reverse merger with privately-held New Jag on March 16, 1999, and changed its name to Jag Media Holdings, Inc. on April 8, 2002. The Company's common stock is registered with the Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934, and, during the conduct at issue, traded on the OTCBB.

11. New Jag was a privately-held, New Jersey corporation with its principal executive offices in Manasquan, New Jersey. New Jag was an Internet-based provider of financial news and investment information before its March 16, 1999 reverse merger with PPI.

**FACTS**

12. In late February and early March 1999, privately-held New Jag began searching for a publicly-traded shell company with which to effect a reverse merger.

New Jag found such a company in PPI, a company ostensibly engaged in marketing.

13.  Starting on or around March 10, 1999, New Jag and PPI began working on a reverse merger. On March 16, 1999, New Jag and PPI closed on a reverse merger pursuant to which, among other things, the shares of the companies were exchanged, several stock purchase agreements were executed, all three officers and directors of PPI resigned, and defendant Valinoti was appointed CEO and president of the Company and chairman of its board. The Company was re-named JagNotes.com, Inc.

14.  Before the March 16, 1999 reverse merger between PPI and New Jag, a PPI officer (the "Officer") arranged for an affiliate of PPI (the son of another PPI officer and director) (the "Seller") to sell 250,000 shares of the securities of the Company to defendant Valinoti. Defendant Valinoti and the Officer signed a March 11, 1999 memorandum of understanding ("MOU"), on behalf of New Jag and PPI, respectively, that stated that it was New Jag and PPI's intent that the reverse merger would be subject to, among other things, the condition that "[the Seller] shall sell 250,000 free trading shares at the closing for $32,500."

15.  The stock purchase agreement between the Seller and defendant Valinoti (the "Agreement") specified that the Seller would sell 250,000 shares of the securities of the Company to defendant Valinoti for $32,000 concurrent with the closing of the reverse merger. Unlike the other stock purchase agreements made effective with the closing of the reverse merger, the Agreement did not contain a paragraph identifying the shares being sold as "restricted" and cautioning that the shares were subject to resale restrictions.

16.  The sale by the Seller to defendant Valinoti was completed concurrent

with the reverse merger on March 16, 1999, with the Seller selling defendant Valinoti 250,000 shares of the securities of the Company for $32,000. No Securities Act registration statement was in effect as to the Seller's sale of the 250,000 shares of the securities of the Company to defendant Valinoti.

17. After purchasing the 250,000 shares of the securities of the Company from the Seller, defendant Valinoti deposited the shares into a brokerage account held in his name.

18. From on or about March 25, 1999 until on or about April 29, 1999, after the shares had increased in value from approximately $.34 per share on the day of the reverse merger to a high during the period of approximately $18.25 per share, defendant Valinoti began selling the subject shares on the OTCBB. During this period, defendant Valinoti sold 130,000 shares of the securities of the Company, generating illicit gains of approximately $1,831,875.

19. Defendant Valinoti also transferred 118,000 shares of the securities of the Company to third-parties as investments and to pay for services rendered to the Company. Defendant Valinoti made the following transfers: (i) on or about April 24, 1999, defendant Valinoti transferred 50,000 shares to a brokerage account held by the principal owner of an oil drilling company ("Transferee A"); (ii) on or about April 24, 1999, defendant Valinoti transferred 50,000 shares to a brokerage account held in the name of an oil drilling company owned by Transferee A ("Transferee B"); (iii) on or about May 2, 1999, defendant Valinoti transferred an additional 12,000 shares to Transferee B; and (iv) on or about June 30, 1999, defendant Valinoti transferred 6,000 shares to a public relations firm ("Transferee C").

20. Defendant Valinoti's transfers of shares of the securities of the Company to Transferee A and Transferee B were made in exchange for an approximate 25 percent ownership interest in Transferee B. Defendant Valinoti assured Transferee A that these shares were "free trading" and not subject to any resale restriction.

21. Defendant Valinoti's transfer of shares of the securities of the Company to Transferee C was made in payment for public relations services rendered by Transferee C to the Company. Defendant Valinoti assured Transferee C's principal that these shares were "free trading" and not subject to any resale restriction.

22. Within one year of defendant Valinoti transferring the shares to them, Transferees A, B and C publicly sold all 118,000 shares on the OTCBB, generating proceeds of approximately $1,105,165.

23. No Securities Act registration statement was in effect as to any of the sales or transfers by defendant Valinoti, or as to any sales by Transferee A, B or C, and no Rule 144 notice of intention to sell, or any other disclosure has ever been filed with the Commission by defendant Valinoti or Transferee A, B or C.

## CLAIM FOR RELIEF

### (Section 5 of the Securities Act)

24. Paragraphs 1 through 23 are realleged and incorporated by reference.

25. By engaging in the foregoing conduct, defendant Valinoti violated Section 5 of the Securities Act [15 U.S.C. § 77e].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court enter a judgment that:

(i) permanently enjoins defendant Valinoti from violating Section 5 of the Securities Act [15 U.S.C. § 77e];

(ii) orders defendant Valinoti to disgorge his illicit gains, plus prejudgment interest thereon; and

(iii) grants such other relief as the Court deems just or appropriate.

Respectfully submitted,

_____
Paul R. Berger D.C. Bar No. 375526
Robert B. Kaplan
Nina B. Finston, D.C. Bar No. 431825
James J. Bresnicky, D.C. Bar No. 453713
(202) 551-4533 (Bresnicky)
(202) 772-9235 (fax) (Bresnicky)

SECURITIES AND EXCHANGE
COMMISSION
100 F Street, N.E.
Washington, D.C. 20549-5561

Attorneys for Plaintiff

Dated: September 29, 2005